1          **IN THE UNITED STATES DISTRICT COURT**
              **FOR THE DISTRICT OF NORTH DAKOTA**
2

3    - - - - - - - - - - - - - - -
                                  )
4    United States of America,    )
                                  )
5              Plaintiff,         )
                                  )
6          vs.                    )    **FILE NO. 3:22-cr-10-01**
                                  )
7    Macalla Lee Knott,           )
                                  )
8              Defendant.         )
                                  )
9    - - - - - - - - - - - - - - -

10

11

12

13              **T R A N S C R I P T**

14                   **O F**

15         **P R O C E E D I N G S**

16        **Change of Plea - March 13, 2023**

17                **Pages 1-32**

18

19

20

21

22   HELD AT: QUENTIN N. BURDICK UNITED STATES COURTHOUSE
              655 FIRST AVENUE NORTH
23            FARGO, NORTH DAKOTA  58102

24   BEFORE:  THE HONORABLE PETER D. WELTE

25   COURT REPORTER: KELLY A. KROKE

**A P P E A R A N C E S**

**MR. CHRISTOPHER C. MYERS**          **COUNSEL FOR PLAINTIFF;**
Office of U.S. Attorney
655 1st Avenue North, Ste. 250
Fargo, ND  58102


**MS. TANYA M. MARTINEZ**          **COUNSEL FOR DEFENDANT;**
Attorney at Law
3332 4th Avenue South
Fargo, ND  58103

```
 1              P R O C E E D I N G S
 2              (March 13, 2023, the following proceedings
 3    commenced at 2:35 p.m.:)
 4              THE COURT:  We're on the record and the case
 5    before the Court is the United States vs. Macalla Knott.
 6              Ms. Martinez, did I pronounce that
 7    correctly?
 8              MS. MARTINEZ:  Yes, you did, Your Honor.
 9    Thank you.
10              THE COURT:  Thank you.  Ms. Knott is present
11    represented by Tanya Martinez.  The United States is
12    represented by Chris Myers.  And we're here for a change
13    of plea and the United States Department of Probation is
14    not present but Dyan Jorgenson will be the probation
15    officer assigned to this matter.  That's Dyan Jorgenson.
16              I have a Third Superseding Indictment that
17    I'm working from as Document 225 in this matter and,
18    Ms. Knott, since we've kind of framed up the issue I
19    think the next matter would be to have you placed under
20    oath if you would please raise your right hand.  Thank
21    you.  Lori will administer an oath.
22              (Oath administered.)
23              THE DEFENDANT:  Yes.
24              THE COURT:  Ms. Knott, how are you doing
25    this afternoon?
```

```
 1                    THE DEFENDANT:  I'm good.  How are you?
 2                    THE COURT:  I'm good, thank you.  I'm doing
 3       fine.  You've been in custody since the 25th of August
 4       give or take.  Does that sound about right?
 5                    THE DEFENDANT:  Yup.
 6                    THE COURT:  Okay.  And where have you been
 7       in custody?
 8                    THE DEFENDANT:  I was in Texas and then now
 9       I'm in North Dakota, Cass County Jail.
10                    THE COURT:  Okay.  All right.  And during
11       this time in custody, Ms. Knott, have you had adequate
12       access to Ms. Martinez?
13                    THE DEFENDANT:  Yes.
14                    THE COURT:  Okay.  And you understand why
15       we're here today?
16                    THE DEFENDANT:  Yes.
17                    THE COURT:  It's a pretty thick third
18       Superseding Indictment.  It's a 26-page document and the
19       Plea Agreement itself is a 19-page document.  So you've
20       had enough time to prepare for this hearing and to
21       proceed today?
22                    THE DEFENDANT:  Yes.
23                    THE COURT:  Okay.  Are you satisfied with
24       the legal representation that you've received in this
25       matter?
```

```
 1                    THE DEFENDANT:  Yes.

 2                    THE COURT:  Okay.  The Plea Agreement calls

 3     for a voluntary plea of guilty to Count One, Four and

 4     Five of the Third Superseding Indictment and then also

 5     for an admission to the forfeiture allegation.  You

 6     understand that?

 7                    THE DEFENDANT:  Yes.

 8                    THE COURT:  Okay.  Count One of the Third

 9     Superseding Indictment is a drug conspiracy charge.

10     Count Four is a -- one moment please, is an

11     international money laundering conspiracy charge and

12     then there's Count Five, which is the charge of

13     continuing criminal enterprise.  Those are the three

14     charges that you'd be pleading guilty to in the Third

15     Superseding Indictment.

16                    Now, Ms. Knott, in addition to those pleas

17     of guilty, what's contemplated at sentencing is that

18     Count Two and Count Eight of the Third Superseding

19     Indictment would be dismissed.  That's at least what I

20     see in the Plea Agreement.

21                    THE DEFENDANT:  Okay.

22                    THE COURT:  So, Ms. Knott, does that seem

23     like a summary of the Plea Agreement that you thought

24     you were coming to talk about today?

25                    THE DEFENDANT:  Yes.
```

1           THE COURT:  Okay.  Now, Ms. Martinez, would

2    you and your client wish the Court to specifically

3    review each particular count of the Indictment or would

4    you waive such a reading?

5           (The defendant and her counsel conferring.)

6           MS. MARTINEZ:  We'll waive it, Your Honor.

7           THE COURT:  All right.  Thank you.

8           With regards to this Plea Agreement then,

9    Ms. Knott, voluntary pleas of guilty to One, Four and

10   Five and an admission to the forfeiture allegation.  You

11   do understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  And you understand that

14   this is not a Plea Agreement that's binding upon the

15   Court and it's also not binding on probation.  You

16   understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  So the practical consequence of

19   that -- even though you understand it and I have no

20   reason to believe Ms. Martinez hasn't reviewed that with

21   you, but the practical impact of that is that if the

22   Court imposes sentence that's not consistent with the

23   Plea Agreement or if the Department of Probation comes

24   up with something in the Presentence Investigation

25   Report that isn't to your liking, although you

1  definitely will have a chance to object and to place

2  that objection before the Court and to have the Court

3  rule on the objection, you wouldn't get to withdraw your

4  guilty plea because the Court's not a party to the Plea

5  Agreement and neither is probation.

6          You understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  The factual basis in this

9  Plea Agreement is pretty important and the factual basis

10 is paragraph 6 which runs from page 2 of the Plea

11 Agreement all the way up to page I think it's 12.

12 That's correct, page 2 almost through page 12 is

13 paragraph 6 of this Plea Agreement.  Now why do I bring

14 that up?  I bring it up because paragraph 6 is meant to

15 establish a factual basis for the charges that you would

16 be convicted of here.

17         In order for the United States to sustain

18 their burden of proof, Ms. Knott, there must be a

19 factual basis that establishes the essential elements of

20 the three crimes to which you'd be pleading guilty and

21 also to the forfeiture allegation that you'd be

22 admitting, okay?

23         So with paragraph 6 of the Plea Agreement

24 what's going to happen here is if we get through this

25 hearing and you end up pleading guilty, I'm going to

1   adopt paragraph 6 and I'm going to give you a chance to

2   object to it, okay?

3           THE DEFENDANT:  Okay.

4           THE COURT:  Additionally, Mr. Myers is very

5   likely to put more facts on the record verbally and I'm

6   just going to instruct you at that time to listen up

7   because if he says anything that you don't agree with

8   Ms. Martinez will object for you, okay?

9           THE DEFENDANT:  Okay.

10          THE COURT:  All right.  Now paragraph 7 from

11  the Plea Agreement which is beginning on page 12, it

12  sets forth the maximum sentences in this matter.

13  Maximum sentence to Count One is life in prison but

14  there's a 15-year minimum mandatory that's contemplated

15  in Count One.  Maximum fine is $20 million.  Maximum

16  term of supervised release is 10 years and the maximum

17  special assessment is $100.

18          On Count Four the maximum term of

19  imprisonment is 20 years.  Maximum fine is $250,000,

20  Ms. Knott.  Maximum supervised release is three years

21  and there's a $100 special assessment as well on that

22  count.

23          On Count Five the maximum term of

24  imprisonment is life and there's a minimum mandatory of

25  life.  There's a $2 million fine that's contemplated as

1    a maximum fine for Count Five, three years of supervised

2    release and a $100 special assessment.  Those are the

3    maximum sentences in this matter.

4            Do you have any questions for me about the

5    maximum sentences?

6            THE DEFENDANT:  No.

7            THE COURT:  Now by pleading guilty to these

8    crimes you would be surrendering and waiving your right

9    to a speedy and public jury trial.

10            THE DEFENDANT:  Okay.

11            THE COURT:  Okay.  That right is not really

12    a stand-alone right.  I mean, it is but it's actually

13    comprised of a whole bunch of other rights that go into

14    that.  That includes the right to select the jury with

15    Ms. Martinez.  You'd be surrendering and waiving your

16    right to pick a jury.  You'd be surrendering and waiving

17    your right to require that the jury return a unanimous

18    verdict.  If we went to trial I would instruct the jury

19    that I won't accept any verdict that is not a 12 nothing

20    verdict.

21            I would also instruct the jury that you're

22    presumed innocent and I would bring that up very early

23    in the jury selection process.  I would talk about the

24    roles of the party of Mr. Myers to prosecute and

25    Ms. Martinez to defend zealously within the bounds of

1    the law.  But I would say that your role would be just

2    to show up and be present; that you're presumed innocent

3    and that you have no role in this case.  There's no

4    requirement that you testify.  You have a privilege

5    against self-incrimination and that's one of your

6    rights.  And if you chose not to testify I would

7    instruct the jury that that's your right and that they

8    can't infer that it means that you're guilty in any way.

9    In fact, I would tell them that it can't be evidence of

10   anything, your declining to testify or choosing not to

11   testify, because that's a constitutional privilege that

12   you hold.

13            THE DEFENDANT:  Okay.

14            THE COURT:  Okay.  Now there's a burden of

15   proof in this matter.  The burden of proof is proof

16   beyond a reasonable doubt.  Now I spoke to you earlier

17   about you being presumed innocent.  That means that

18   these are scales of justice and this here is Macalla

19   Knott.  That means that since you're presumed innocent

20   you start out with an advantage, okay?  The United

21   States must present enough evidence to overcome that by

22   proof beyond a reasonable doubt.  That's the highest

23   burden of proof in our system and it's a burden of proof

24   that is solely borne by the United States.  You have no

25   burden of proof in this matter.

1              THE DEFENDANT:  Okay.

2              THE COURT:  Okay.  Now you also have the

3    right to present evidence and to present witnesses.  And

4    if you couldn't get witnesses here voluntarily,

5    Ms. Martinez would let me know and I would order them to

6    appear for you and I would order them to testify for

7    you.

8              THE DEFENDANT:  Okay.

9              THE COURT:  Also you have the right to

10   examine the evidence of Mr. Myers and the United States

11   and you also have the right to cross-examine the

12   witnesses of the United States.  You also have the right

13   to remain silent and I'm sure when you were arrested you

14   were advised of that right.

15             THE DEFENDANT:  Yes.

16             THE COURT:  Okay.  Under the terms of the

17   Plea Agreement, I'm engaging in colloquy with you just

18   to make sure that I know that you know what you're

19   getting into and that your eyes are wide open, okay?

20             THE DEFENDANT:  Okay.

21             THE COURT:  Okay.  So, Ms. Knott, all of

22   these are rights that you have under our constitutional

23   scheme and under case law and they're rights to a speedy

24   and public jury trial.  You're surrendering and waiving

25   all of those rights by pleading guilty.

1           Do you understand that?

2               THE DEFENDANT:  Yes.

3               THE COURT:  Now is that a decision that

4   you've discussed and counseled with Ms. Martinez about?

5               THE DEFENDANT:  Yes.

6               THE COURT:  Okay.  And you've also counseled

7   with her about the consequences of that decision?

8               THE DEFENDANT:  Yes.

9               THE COURT:  Okay.  So let me phrase it

10  differently.  Is this her decision or is this your

11  decision?

12              THE DEFENDANT:  Mine because I'm guilty.

13              THE COURT:  Okay.  So you're pleading guilty

14  because you are, in fact, guilty of the offenses?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Okay.  Now you do understand

17  that the Court will impose sentence according to the

18  Sentencing Guidelines?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Okay.  That's set forth a little

21  bit in paragraph 10 but given the procedural posture of

22  your case and the substance of your case I just wanted

23  to briefly review with you the factors under 18 U.S.

24  Code 3553(a).  Those are sometimes called the (a)

25  factors by the practitioners of the law and there's

1    seven of them.

2              They include the nature and the

3    circumstances of the offense and the history and the

4    characteristics of Macalla Knott.  They include the need

5    for the sentence imposed to reflect the purposes of

6    sentencing.  That means deterrence, respect for the law,

7    rehabilitation, protection of the public.  These

8    purposes of sentencing must be a consideration of the

9    Court.

10              The Court must consider the types of

11   sentences available, including whether probation is

12   permitted or on the other end of the spectrum whether or

13   not there's a minimum mandatory sentence.

14              The Court must consider the sentencing range

15   that's established by application of the guidelines.

16   When Ms. Martinez was counseling you, I suspect at some

17   point she presented a grid to you that looks like this

18   (indicating).  Does that look familiar?

19              THE DEFENDANT:  Yes.

20              THE COURT:  The Court must consider that

21   range.  It's not mandatory on the Court.  It's just

22   something that the Court must consider as an advisory

23   range.

24              The fifth factor that the Court must

25   consider are the policy statements that are set forth in

 1    the United States Sentencing Guidelines, okay?

 2              THE DEFENDANT:  Okay.

 3              THE COURT:  The Court must also consider the

 4    need to provide restitution of victims, Ms. Knott, and

 5    also must consider the need to avoid unwarranted

 6    sentencing disparities amongst defendants with similar

 7    records who have been found guilty of similar conduct.

 8              Those seven factors are the factors the

 9    Court must consider under 18 U.S. Code 3553(a) in

10    imposing sentence, okay?

11              THE DEFENDANT:  Okay.

12              THE COURT:  That's a really long-winded way

13    of telling you that's what paragraph 10 is.  Do you have

14    any questions about paragraph 10?

15              THE DEFENDANT:  No.

16              THE COURT:  You've reviewed that paragraph

17    with Ms. Martinez?

18              THE DEFENDANT:  Yes.

19              MS. MARTINEZ:  We have, Your Honor.  I'm

20    looking through the many pages to find out.

21              THE COURT:  Could you pull your mic down.

22              MS. MARTINEZ:  I'm looking through the many

23    pages because I've lost where the Court is at now.

24              THE COURT:  Absolutely.  You'll need to bend

25    the microphone down to your voice box level and then I'm

1    on page 15 of the Plea Agreement.  I just finished

2    page 14.  At the bottom of page 14 is paragraph 10 of

3    the Plea Agreement.

4              MS. MARTINEZ:  That's where we're at.  Thank

5    you.

6              THE COURT:  You bet.  Feel free to stop us

7    at any time, okay?

8              MS. MARTINEZ:  Thank you, Your Honor.

9              THE COURT:  You're welcome.

10             Ms. Knott, the Plea Agreement as I mentioned

11   is binding upon the United States Attorney's Office and

12   you but not on the Court and probation.  You understand

13   that?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Now Mr. Myers is an Assistant

16   United States Attorney with the District of North

17   Dakota, okay?  Now he represents that office.

18             THE DEFENDANT:  Okay.

19             THE COURT:  In this particular case there's

20   a Plea Agreement that's binding upon the United States

21   Attorney's Office for the District of North Dakota but

22   no other U.S. Attorney's Office or any local prosecutors

23   as well.  You understand that?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Okay.  The parties are agreeing

```
 1    that the base offense level under 5G1.3(b) as in boy is
 2    life imprisonment.  At sentencing the United States is
 3    agreeing to recommend a two-level downward adjustment
 4    for accepting responsibility and one level for timely
 5    notification.  At sentencing the United States will
 6    recommend a sentence at the low end of the guideline
 7    range or the minimum mandatory, whichever is greater,
 8    and will move to dismiss Count Two and Eight of the
 9    Third Superseding Indictment.
10              THE DEFENDANT:  Okay.
11              THE COURT:  Is that your understanding?
12              THE DEFENDANT:  Yes.
13              THE COURT:  I'm going to go off script a
14    little bit here.  Mr. Myers, is there any reason to go
15    in-camera for this particular hearing today?
16              MR. MYERS:  No, Your Honor.
17              THE COURT:  Ms. Martinez, you agree with
18    that?
19              MS. MARTINEZ:  I agree.
20              THE COURT:  Okay.  All right.
21              Now, Ms. Knott --
22              THE DEFENDANT:  Yes.
23              THE COURT:  -- I want to draw your attention
24    to paragraph 20 of the Plea Agreement which is on
25    page 17, okay?  United States will file a Plea Agreement
```

1  Supplement in this case and they have done that and it

2  bears the signature of Chris Myers, your attorney,

3  Ms. Martinez, and you.  Now they do that routinely in

4  every case whether there's additional terms or not,

5  okay?  It's just a matter of course.  You are

6  acknowledging that no threats or promises or

7  representations exist beyond the terms of this Plea

8  Agreement; is that true?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Okay.  You're waiving your right

11 to appeal this matter.  You understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Okay.  Now you're reserving the

14 right to appeal in two instances.  One would be if the

15 Court imposes a sentence above the upper end of the

16 Court-determined guideline range.  So when we get to

17 sentencing and I look at Ms. Jorgenson's PSIR and we

18 determine the guideline range, if I impose a sentence

19 above the upper end of that then the waiver of appeal

20 doesn't apply, okay?

21             THE DEFENDANT:  Okay.

22             THE COURT:  There's one other instance and

23 that is if you develop a claim of ineffective assistance

24 of counsel.  Do you understand that?

25             THE DEFENDANT:  Yes.

1              THE COURT:  You're satisfied with your

2    lawyer, correct?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Has she answered all of your

5    questions?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Okay.  Has there been any

8    questions that you've had that have gone unanswered?

9              THE DEFENDANT:  No.

10             THE COURT:  Has she been available to you as

11   you so desire?

12             THE DEFENDANT:  Yes.

13             THE COURT:  By pleading guilty you are

14   specifically waiving your right to seek to withdraw your

15   guilty plea in this matter.  That means that after I

16   accept your plea you won't be given a chance to have

17   buyer's remorse.

18             Do you understand that?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Ms. Knott, I've summarized the

21   Plea Agreement and I've gone over it with some level of

22   specificity.  But you've indicated that you have

23   reviewed this Plea Agreement line for line and letter

24   for letter with your lawyer, correct?

25             THE DEFENDANT:  Yes.

```
 1                    THE COURT:  So you have read and you do
 2      understand the Plea Agreement?
 3                    THE DEFENDANT:  Yes.
 4                    THE COURT:  Okay.  Does the Plea Agreement
 5      that I just reviewed with you represent your full
 6      understanding with the United States?
 7                    THE DEFENDANT:  Yes.
 8                    THE COURT:  Okay.  Other than what's in the
 9      Plea Agreement, have there been any other promises or
10      assurances that have been made in order to get Kayla
11      Knott to plead guilty?
12                    THE DEFENDANT:  No.
13                    THE COURT:  Anybody threatened you to make
14      you plead guilty?
15                    THE DEFENDANT:  No.
16                    THE COURT:  You're pleading guilty because
17      you are, in fact, guilty of these crimes?
18                    THE DEFENDANT:  Yes.
19                    THE COURT:  Okay.  And you understand that
20      it's a nonbinding Plea Agreement?
21                    THE DEFENDANT:  Yes.
22                    THE COURT:  And, Ms. Martinez, all formal
23      plea offers were communicated to your client?
24                    MS. MARTINEZ:  Pardon, Your Honor?
25                    THE COURT:  All formal plea offers were
```

```
 1   communicated to your client?
 2                MS. MARTINEZ:  Yes, Your Honor.
 3                THE COURT:  Thank you.  This would be a
 4   felony conviction.  There would be three of them
 5   actually, which means that you would be not able to vote
 6   or hold public office or serve on a jury or possess a
 7   firearm.
 8                Do you understand that?
 9                THE DEFENDANT:  Yes.
10                THE COURT:  Okay.  Any questions for me
11   about your rights?
12                THE DEFENDANT:  No.
13                THE COURT:  Any questions for me about the
14   Plea Agreement?
15                THE DEFENDANT:  No.
16                THE COURT:  Are you ready to enter pleas in
17   this matter, Ms. Knott?
18                THE DEFENDANT:  Yes.
19                THE COURT:  Okay.  I'm going to walk through
20   these three counts with you.  To Count One of the Third
21   Superseding Indictment, do you plead guilty or not
22   guilty?
23                THE DEFENDANT:  Guilty.
24                THE COURT:  To Count Four of the Third
25   Superseding Indictment, do you plead guilty or not
```

1  guilty?

2              THE DEFENDANT:  Guilty.

3              THE COURT:  And to Count Five of the Third

4  Superseding Indictment, do you plead guilty or not

5  guilty?

6              THE DEFENDANT:  Guilty.

7              THE COURT:  Okay.  With regards to the

8  forfeiture allegation that's set forth in the Third

9  Superseding Indictment, do you admit or deny that

10  allegation?

11              THE DEFENDANT:  Admit.

12              THE COURT:  Okay.  Now I talked about

13  paragraph 6 of the Plea Agreement starting on page 2 and

14  I believe that you've indicated to me that you have

15  reviewed paragraph 6 of the Plea Agreement with your

16  lawyer, correct?

17              THE DEFENDANT:  Correct.

18              THE COURT:  Okay.  I'm going to adopt

19  paragraph 6 of the Plea Agreement as a framework for a

20  factual basis to sustain the essential elements of the

21  three pleas of guilty and the forfeiture allegation.

22  I --

23              MS. MARTINEZ:  Your Honor -- I apologize,

24  Your Honor, what page are you on?

25              THE COURT:  I'm actually back to page 2 of

1    the Plea Agreement but it is -- Ms. Martinez, it's

2    actually page 2 through 12 of the Plea Agreement.

3                MS. MARTINEZ:  Got you.  Thank you, Your

4    Honor.

5                THE COURT:  Sure, paragraph 6.  So I'm

6    adopting that by reference and incorporating it into

7    these proceedings.  It bears your signature.

8                Ms. Martinez, do you have any objection to

9    paragraph 6?

10               MS. MARTINEZ:  No, Your Honor.  We've been

11   over this.

12               THE COURT:  Okay.  Now the second part of

13   this is I'm going to ask Mr. Myers if he wishes to add

14   anything.  So just listen up right now and if he says

15   anything that you object to you'll get to posit that

16   objection at the end.

17               Go ahead, sir.

18               MR. MYERS:  Thank you, Your Honor.  And I'll

19   cover additional factual basis for all three counts here

20   today and the forfeiture allegation.  This conspiracy

21   essentially began before 2019 but, as it relates to the

22   Indictment and the charges in this case, I'll focus on

23   2019 to the present.

24               Ms. Knott began to traffic drugs in the

25   St. Cloud area upon being released from prison in

1  Shakopee in the summer and fall of 2019 and through the

2  course of this conspiracy had two primary sources of

3  supply.  Both of these individuals we've identified

4  fully.  Both of them are Mexican Nationals.  Both of

5  them are currently in Mexico.

6          Miss Knott began arranging transactions and

7  conducting transactions on numerous occasions in 2019

8  into early 2020.  Primarily at that time it was large

9  quantities of methamphetamine, a pound, sometimes

10  multiple pounds.  Of course, there were smaller

11  transactions and I won't go through all of the

12  transactions because there's hundreds and hundreds of

13  them through the course of this conspiracy by various

14  co-conspirators.  As the conspiracy evolved, she

15  basically was a leader, manager and supervisor of this

16  conspiracy into Minnesota and other areas of the

17  midwest, including North Dakota.

18          In March of 2020 she decided to go down to

19  Mexico and lived in Mexico until her arrest in the fall,

20  early fall of 2022.  From Mexico she was able to arrange

21  and manage shipments from the sources of supply into

22  Minnesota using various distributors and various people

23  to distribute, collect money and then send money back to

24  Mexico at her direction.  Those people that she

25  supervised are listed in the Indictment and there are

1  more than five.  As a matter of fact, there's probably

2  20.  But I'll list those just for the record as alleged

3  in the Indictment that the Court's already adopted.  But

4  Melanie Quick, Jeff Knott, Tiffany Keomany, James

5  Garner, Demian Hebert, Robert Radka, Joseph Myers and

6  Evan Laudinger.  Each of these people played different

7  roles in the conspiracy.  Some were involved in handling

8  money, concealing money, sending money.  Others were

9  involved in transporting and distributing very large

10  quantities of methamphetamine.  There was also cocaine

11  moved during the conspiracy and toward the end

12  quantities of fentanyl but it was primarily

13  methamphetamine during the conspiracy.

14        We've listed as overt acts in the Indictment

15  and Miss Knott was involved in directing and arranging

16  those shipments except for the hundred pounds of

17  methamphetamine and nine pounds of fentanyl in one of

18  the paragraphs.  That was done after she was in custody

19  in Mexico or the United States.  I don't remember the

20  dates but she was not involved in that particular

21  transaction.  We've identified the source of supply in

22  Mexico that was responsible for that particular

23  transaction.

24        That would establish the continuing series

25  of transactions.  There were numerous others and as part

 1    of the conspiracy there was hundreds and hundreds of

 2    pounds moved by Miss Knott of methamphetamine which

 3    would establish the requisite quantity for a mandatory

 4    life sentence as far as engaging in a continuing

 5    criminal enterprise.

 6                In the forfeiture allegation which is also

 7    related to the substantial income prong of the

 8    continuing criminal enterprise, we've alleged the

 9    enterprise or conspiracy moved approximately $10 million

10    and that is based on the drug quantity that we estimate

11    is involved.  And we expect that to be a money judgment

12    at the end at sentencing and perhaps we can agree on the

13    requisite money judgment at that time.  There's -- and

14    this is clear from the discovery now as it's evolved and

15    has -- and I wanted to highlight this for

16    Miss Jorgenson.

17                The drug quantity of methamphetamine is

18    fairly clear as it relates to hundreds of pounds of

19    methamphetamine.  What is not clear is the quantity of

20    cocaine moved by this conspiracy and we, through the

21    cooperation of a number of witnesses, have determined

22    that some of the cocaine quantities may have been

23    embellished and we were provided false information and

24    that's been highlighted in the discovery.  I wanted to

25    make sure that Miss Jorgenson was aware of that.

1          There was a ledger provided to us that

2    relates to 24 kilos of cocaine moved per month, and

3    we've determined through the assistance of a number of

4    witnesses that that may have been false.  It doesn't

5    matter as it relates to the charges that Miss Knott is

6    pleading guilty to, but it may affect the overall

7    forfeiture money that relates to this overall

8    enterprise.

9          And so I just wanted to highlight that right

10   now.  We're still investigating that and there have been

11   a number of witnesses that have helped us make that

12   determination.  And so that's why there's a little bit

13   of uncertainty as to the monetary amount but suffice it

14   to say there was kilogram quantities of cocaine being

15   moved in any event.  That's a large amount and

16   ultimately a large amount of fentanyl as well.

17          So I think that covers the elements of the

18   continuing criminal enterprise.  Just to put a fine

19   point on the elements of the money laundering

20   conspiracy, as I noted there were a number of people

21   moving money through various financial transactions,

22   money transmitting systems like Western Union or bank

23   transfers or monetary moving systems like Remitly.  And

24   they would move this money and send it to various

25   designees in Mexico.

1            And so Miss Knott would tell, for example,

2    Melanie Quick:  Send the money to Kimberly Eder in

3    Mexico, or Eder Kimberly I think is the name, in Mexico,

4    and Melanie would then send the money to that designee

5    who was somebody that was working on behalf of the

6    organization just to accept the money.  And so the

7    purpose of that -- the movement of money in that fashion

8    was to conceal the nature and source of the income that

9    was being provided by sending it to people that were not

10   necessarily involved in the actual drug trafficking.

11   And it was also done to further promote the ongoing

12   conspiracy.

13           And so there was a number of people involved

14   in this aspect.  Tiffany Keomany sent and received a

15   bunch of money as well as distributed large quantities

16   of methamphetamine.  So when I say these -- there were

17   numerous people having different roles, some of them

18   were drug trafficking and receiving and sending money.

19   Some just played the part of money.  Some just played

20   the part of drug trafficking.  But they all took

21   direction at some level from Miss Knott who again was in

22   Mexico.

23           Law enforcement then identified where she

24   was in Mexico.  She was apprehended and because she's a

25   U.S. citizen was expelled from Mexico and was quickly

1    transported to Brownsville, Texas where I think she

2    mentioned she was housed for a short amount of time

3    before being brought up here.  So I think I've covered

4    broadly, Judge, the elements for the charges.

5              I noted in previous hearings and I'll note

6    it again for the record venue for North Dakota.  In the

7    fall of 2021 West Fargo and Fargo PD began purchasing

8    methamphetamine here in Fargo from a lady named Mary

9    Thompson.  Mary Thompson was selling methamphetamine

10   here in Fargo on a number of occasions where law

11   enforcement made controlled buys from her.  Ultimately

12   they arrested her with I think a quarter or a half-pound

13   of meth here in Fargo.  She began to cooperate and she

14   ultimately arranged for the arrest of Robert Radka who

15   is from Melrose, Minnesota and from there the

16   investigation exploded identifying Kayla Knott as being

17   responsible for arranging shipments to Robert Radka and

18   Joe Myers.

19             And so I think I've created an adequate

20   record for the factual basis here in a summary fashion.

21   There's a lot more to the story, Judge, but I think that

22   covers it.

23             THE COURT:  Mr. Myers, I certainly don't

24   mean to lose the forest for the trees here but Ms. Knott

25   was in Mexico.  The arrest warrant was issued for her.

1    Actually there were several in the record that were

2    issued and you indicated that she was expelled and

3    apprehended in Brownsville but I see that the record

4    seems to indicate she was arrested in the Northern

5    District of Texas.  I thought Brownsville was --

6                MR. MYERS:  Yeah.

7                THE COURT:  -- on the border.

8                MR. MYERS:  I might have the city wrong,

9    Judge.

10               THE COURT:  It's not important to the

11   factual basis but --

12               MR. MYERS:  In any event she was expelled by

13   Mexican immigration and FBI arranged for an appearance

14   in Texas so I might have the city wrong.  I know

15   Brownsville has been on the news so maybe that's where I

16   thought of it but it might have been a different city.

17   Miss Knott would know.

18               THE DEFENDANT:  I think it's Johnson County.

19   I was in Johnson County and it's in Dallas I believe.

20               THE COURT:  Okay.  Well, regardless it

21   just -- I was trying to follow, especially with regards

22   to the continuing criminal enterprise.  Thank you,

23   Mr. Myers.

24               Ms. Martinez, any objection to the factual

25   basis as set forth by the United States?

```
 1              MS. MARTINEZ:  No, Your Honor.

 2              THE COURT:  Okay.  Well, Ms. Knott, it is

 3    the finding of the Court that you are fully competent.

 4    You're clearly fully capable of entering informed pleas

 5    in this matter.

 6              THE DEFENDANT:  Yes.

 7              THE COURT:  It's the finding of the Court

 8    that you are aware of the nature of the charges and of

 9    the consequences of pleading guilty, and it's the

10    finding of the Court that your pleas, all three of them,

11    and the admission are knowing and voluntary pleas and

12    they are supported by an independent basis in fact

13    containing each of the essential elements of the three

14    offenses charged and the forfeiture that is alleged.

15    Your pleas and admission are accepted.  You are now

16    adjudged as guilty.  I make the same findings on the

17    civil forfeiture per the civil standard.

18              I will order a Presentence Investigation

19    Report and, Ms. Knott, what that means is that Dyan

20    Jorgenson's going to be reaching out to you to

21    communicate with you and there will be an interview by

22    her for the Presentence Investigation Report.  And

23    she'll develop this report and the parties will have

24    chances to object to it and then we'll use that report

25    to impose sentence according to paragraph 10 of the Plea
```

1  Agreement and according to the letter and the spirit of

2  the law and the Plea Agreement itself.

3              Now every step of the way you have the right

4  to counsel so it isn't like Ms. Jorgenson's going to

5  reach out to you without Ms. Martinez there.  When you

6  have your interview with probation, Ms. Martinez will be

7  there, okay?

8              THE DEFENDANT:  Okay.

9              THE COURT:  All right.  What's your date of

10  birth?

11              THE DEFENDANT:  10/19/1992.

12              THE COURT:  So you're just barely 30 years

13  old.

14              THE DEFENDANT:  Yeah.

15              THE COURT:  Okay.  Do you have any questions

16  for me about how this goes moving forward?

17              THE DEFENDANT:  No.

18              THE COURT:  Okay.  I have a sentencing date

19  and the sentencing date that I have right now is Monday,

20  August 7, at 9 a.m.

21              Mr. Myers, do you think that works for the

22  United States?

23              MR. MYERS:  That would be fine, Judge.  I

24  anticipate the parties will request that date be moved

25  so -- and, of course, it will take some time for

1    Miss Jorgenson to digest the discovery in this case

2    so -- but that's fine for us.

3              THE COURT:  Okay.  Ms. Martinez, for the

4    defense?

5              MS. MARTINEZ:  Agreed.

6              THE COURT:  Okay.  We'll set it for Monday,

7    August 7, and then we'll tickle the file expecting that

8    it will likely be moved.  I think that covers

9    everything, Ms. Knott.  Do you have any questions for

10   the Court?

11             THE DEFENDANT:  No.

12             THE COURT:  Ms. Martinez, anything further

13   on behalf of the defense?

14             MS. MARTINEZ:  No, Your Honor.

15             THE COURT:  Mr. Myers, anything further on

16   behalf of the United States?

17             MR. MYERS:  No, Your Honor.  Thank you.

18             THE COURT:  Thank you.  All righty.  Good

19   luck to you, Ms. Knott, and we'll see you sometime in

20   August or a little later.

21             THE DEFENDANT:  Okay, thank you.

22             THE COURT:  Thank you.  We're in recess.

23             (Adjourned at 3:15 p.m.)

24

25

1                    **CERTIFICATE OF REPORTER**

2              I, Kelly A. Kroke, a duly appointed

3    Registered Professional Reporter;

4              DO HEREBY CERTIFY that I reported in

5    shorthand the foregoing proceedings had and made a

6    record at the time and place indicated.

7              I DO HEREBY FURTHER CERTIFY that the

8    foregoing and attached (32) typewritten pages contain an

9    accurate transcript of my shorthand notes then and there

10   taken.

11              Dated this 5th day of February, 2025.

12

13

14

15

16

17              /s/Kelly A. Kroke
                KELLY A. KROKE - RPR, RMR
18              United States District Court Reporter
                District of North Dakota
19              Eastern Division

20

21

22

23

24

25